A92A1862. COX et al. v. REWIS et al.
(429 SE2d 314)

BEASLEY, Judge.

Betty Rewis and her husband sued Martin Cox and his mother for injuries sustained by Mrs. Rewis in a motor vehicle collision caused by the negligence of Martin Cox. The jury awarded $30,000 to Mrs. Rewis, which by agreement of the parties was reduced to $25,000 because of $5,000 in PIP insurance benefits received by Mrs. Rewis.

The plaintiffs' evidence was as follows: Mrs. Rewis testified that in 1988 she began having complaints of pain between her shoulders and running down her right arm into her hand. She did not know the cause of these symptoms, although they began when she was working as a quality control inspector bending down and using her arms and hands to pick up shirts. Her family physician, Dr. McRae, referred her to Dr. Cannon, a neurosurgeon. In January of 1989, Dr. Cannon

performed surgery upon Mrs. Rewis. On April 17, 1989, he released her to return to work. Because of a better job opportunity, she left her prior employment and became employed as a bench operator. She assembled small parts into the base of an electrical meter, using a small electrical screwdriver with her right hand approximately 50-60 percent of the time.

Mrs. Rewis testified that from the time she returned to work until the collision, which occurred on September 14, 1989, she did not have any pains in her back, neck, or right hand. At the time of the collision, her car was in a stationary position, and she had her right hand on the steering wheel when her car was rear-ended by the car driven by Mr. Cox. Although Mrs. Rewis was rendered unconscious, she did not hit the windshield or steering column, sustain any cuts or lacerations, or break her wrist. She drove her car away from the accident but later began experiencing soreness in her neck, back, and chest area. She went to the emergency room approximately two hours after the accident, was given medication, and was told to see her regular physician if her pain persisted. She saw Dr. McRae approximately one week later. He again referred her to Dr. Cannon.

Mrs. Rewis, as well as her mother and husband, testified that she engaged in a wide range of daily activities which have become very limited since the collision.

After the trial court denied a motion for directed verdict filed by defendants at the close of plaintiffs' evidence, they introduced the deposition testimony of Drs. McRae and Cannon.

They testified that Mrs. Rewis previously had been diagnosed as suffering from degenerative disc disease in her cervical spine with moderate spondylosis. In January 1989, Dr. Cannon performed a laminectomy on her after determining that she had a ruptured or herniated disc. Thereafter, she complained of pain and discomfort in her left shoulder, but she did not have any problems concerning pain in her neck or back or difficulty with her right hand. When Dr. Cannon saw Mrs. Rewis after the collision, she was complaining of some numbness in her hands and pain in both shoulders. She brought x-rays which showed slight deterioration in her degenerative disc disease. Dr. Cannon ordered an EMG study, which is the best objective, diagnostic test for determining whether the nerve is being pinched or blocked at the area of the wrist where the carpal tunnel is located. The EMG study showed very mild carpal tunnel syndrome (repetitive motion disorder) on the right. Dr. Cannon next saw Mrs. Rewis on October 2. She stated that she did not have any discomfort as long as she remained totally inactive. Dr. Cannon stated that although her symptoms were fairly slight, a carpal tunnel release might be indicated if the symptoms continued. Dr. Cannon next saw Mrs. Rewis on August 3, 1990. She was having difficulty with her right hand and had

similar complaints of numbness. As a result, a carpal tunnel release was performed on August 8.

Dr. Cannon testified that the exact cause of carpal tunnel syndrome is unknown, but that it is ordinarily associated with repetitive motions as required by one's employment; arthritis, diabetes, and birth control pills have been identified as causes. People who have degenerative disc disease are more prone to carpal tunnel. Dr. Cannon was of the opinion that although Mrs. Rewis' carpal tunnel problems could not have been caused by an automobile collision of the severity of the one in this case, her condition could have been worsened by it. Dr. McRae gave like testimony.

1. Defendants contend that the trial court erred in denying their motion for directed verdict as to plaintiffs' theory of recovery based on the family purpose doctrine, in that the evidence failed to establish it.

At the time of the collision, Mr. Cox was living with his father but had been visiting his mother for approximately one week before going to college. She received a telephone call from a family friend who needed a ride to work because his car was in the shop. She allowed her son to use her car to transport the friend to work. He did not have the general use of it, but she allowed him to drive on occasion for specific purposes.

Where the parents have been divorced, with the non-custodial parent furnishing an automobile to the child, the family purpose doctrine is applicable. *Esco v. Jackson*, 185 Ga. App. 901 (1) (366 SE2d 309) (1988); *Alexander v. Kendrick*, 134 Ga. App. 249, 251 (4) (213 SE2d 911) (1975).

"As a general rule, in order for the 'family purpose' or so-called 'family car' doctrine to be applicable, 'it must appear that the father, or head of the household, furnished and maintained the automobile for the pleasure, comfort and convenience of his family. . . .' [Cit.]" (Emphasis omitted.) *Esco*, supra at 902. The parent is liable for the negligence of a child who is using the car for his or her pleasure, based upon a fictitious agency theory and as an exception to another general rule under which a parent is not liable for the tort of a child with which the parent was not connected and did not ratify. *Griffin v. Russell*, 144 Ga. 275, 277-278 (1) (87 SE 10) (1915); *Murch v. Brown*, 166 Ga. App. 538 (304 SE2d 750) (1983). A parent may also be held liable for the negligence of a child where the child occupies the position of agent or servant in the performance of a specific act at the behest of the parent. *Griffin*, supra at 278.

Mrs. Cox relinquished possession of her car to her son with the instruction that he aid a family friend who had telephoned her and needed a ride to work. Under these facts, the jury was authorized to find Mrs. Cox vicariously liable for the negligence of her son, who was

using the car as her agent to accomplish a family purpose. See *Whitlock v. Michael*, 79 Ga. App. 316, 317 (1) (53 SE2d 587) (1949); see generally *Quattlebaum v. Wallace*, 156 Ga. App. 519, 520 (275 SE2d 104) (1980); compare *McCray v. Hunter*, 157 Ga. App. 509 (277 SE2d 795) (1981).

2. Defendants contend that the trial court erred in denying their motion for directed verdict as to Mrs. Rewis' claim for expenses incurred in treating her carpal tunnel problems. The reason given is that plaintiffs failed to present any medical evidence which established a causal relationship between the collision and the carpal tunnel syndrome.

In *Eberhart v. Morris Brown College*, 181 Ga. App. 516, 517 (1) (352 SE2d 832) (1987), the question was whether the defendant was liable for expenses incurred in treating plaintiff's physical injury, and there was a significant lapse of time between the date the injury was sustained and the date the medical expenses were incurred. Causation was a medical question requiring expert evidence. The court distinguished *Eberhart* in *Jordan v. Smoot*, 191 Ga. App. 74 (1) (380 SE2d 714) (1989), and *Madden v. Solomon*, 196 Ga. App. 512 (1) (396 SE2d 245) (1990). In *Madden*, the court held that where there was no significant lapse of time between the date the injuries in an automobile collision were sustained, and the onset of the physical condition for which the injured party sought compensation, the jurors could determine without expert testimony that the expenses incurred were related to injuries sustained in the collision. Likewise in *Jordan*, there was no significant lapse of time, and the court, distinguishing *Eberhart*, held that expert testimony was not required in order for the plaintiff to establish his case sufficiently to withstand the defendant's motion for directed verdict.

Given the fact that Mrs. Rewis' problems with her right hand ceased after her surgery in January of 1989 and did not recur until soon after the collision the following September, this case is more like *Jordan* and *Madden* than *Eberhart*. The jury did not need expert evidence to find that although the automobile accident did not cause the carpal tunnel problems, it aggravated them. Defendants were not entitled to a directed verdict at the close of plaintiffs' evidence.

3. Defendants contend that the trial court erred in instructing the jury on future damages, including loss of future earning capacity, where there was no evidence to justify a charge as to permanent impairment of Mrs. Rewis' earning capacity.

Unlike *Ayers v. Bottoms*, 136 Ga. App. 46 (1) (220 SE2d 134) (1975) and *McDuffie County v. Rogers*, 124 Ga. App. 442, 443 (3) (184 SE2d 46) (1971), cited by defendants, the court did not instruct the jury that it would be authorized to award Mrs. Rewis damages based upon the loss of future earning capacity. Instead, the court charged

that "[i]n weighing the future damages, if any exists, which the plaintiff, Mrs. Rewis, may have sustained as a result of the injuries, you are not limited to a consideration of the loss of future earning capacity or future physical pain and suffering. The law also considers as a proper item of damage any disability in whole or in part to perform normal physical functions." Impaired capacity "to pursue the ordinary avocations of life," or "to perform normal physical functions," is compensated as a part of pain and suffering, irrespective of whether there is evidence of a loss or diminishment of future earning capacity. See *Jones v. Hutchins*, 101 Ga. App. 141, 142 (1) (113 SE2d 475) (1960); Cobb & Eldridge, Ga. Law of Damages (2d ed.), § 38-4, p. 685.

Mrs. Rewis testified to her daily activities before the collision and how she has not been able to perform such activities since the event. The targeted instruction was adjusted to that evidence.

*Judgment affirmed. Birdsong, P. J., concurs. Andrews, J., concurs in the judgment only.*

· DECIDED MARCH 16, 1993.

*Chambless, Higdon & Carson, Emmitte H. Griggs, Robin N. Bargeron*, for appellants.

*Newton, Smith, Durden, Kaufold & Rice, Howard C. Kaufold, Jr., Andrew, Threlkeld & Thompson, Charles H. Andrew, Jr.*, for appellees.