A96A2217. HUTCHESON v. DANIELS.
(481 SE2d 567)

RUFFIN, Judge.

This case arises from an automobile collision which occurred on April 26, 1991. James Wade Daniels sued James Wadis Hutcheson to recover for personal injuries, including a hernia and a carpal tunnel injury. Hutcheson moved for a directed verdict on each claim, contending Daniels failed to prove any causal relationship between the collision and his hernia or carpal tunnel injury. The trial court denied Hutcheson's motions for directed verdict on the causation issue, and the jury rendered a verdict in favor of Daniels. Hutcheson filed a motion for judgment notwithstanding the verdict on the causation issue, which the trial court denied after reviewing the briefs and holding a hearing. Hutcheson appeals the denial of his motions for directed verdict and his motion for j.n.o.v.

"Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of [Hutcheson's] motion for directed verdict . . . and j.n.o.v. will not be disturbed." (Citations and punctuation omitted.) *Southeastern Security Ins. Co. v. Hotle*, 222 Ga. App. 161, 162 (1) (473 SE2d 256) (1996).

1. Hutcheson first enumerates as error the trial court's denial of his motion for directed verdict and j.n.o.v. regarding Daniels' carpal tunnel injury. The record shows that Daniels first noticed problems

with his left wrist a few days after the accident. Daniels testified, "I started (sic) a tenderness in this area (indicating), and then the fingers started. It started radiating down the fingers until all the fingers went completely numb." Daniels sought medical treatment from Dr. Cannon in August 1991, and Dr. Cannon thereafter performed carpal tunnel surgery on his left wrist.

Hutcheson relies on *Eberhart v. Morris Brown College,* 181 Ga. App. 516, 517 (1) (352 SE2d 832) (1987), where this Court affirmed the trial court's grant of a directed verdict for the defendant on the ground that the plaintiff failed to prove through expert medical testimony a causal connection between a football injury he sustained during his 1979-1982 collegiate football career and the physical condition underlying medical expenses he incurred several years later in 1985. The court held that whether the plaintiff's physical condition in 1985 was caused by the injury he sustained while playing college football in 1979-1982 was "not one of those matters which jurors must be credited with knowing by reason of common knowledge." (Citations and punctuation omitted). Id. at 518. The *Eberhart* case, however, has been factually distinguished on a number of occasions.

In *Madden v. Solomon*, 196 Ga. App. 512, 513 (1) (396 SE2d 245) (1990) (physical precedent only), this Court held that where there was no significant lapse of time between the date the injuries were sustained in an automobile collision and the onset of the physical condition for which the injured party sought compensation, "[t]he jury could have determined, without expert testimony, that the expenses incurred were related to the injuries sustained in the collision. [Cit.]" The *Madden* case involved a neck injury which manifested itself within hours of the accident. Likewise, in *Jordan v. Smoot*, 191 Ga. App. 74 (1) (380 SE2d 714) (1989), there was no significant lapse of time, and the Court, distinguishing *Eberhart*, held that expert testimony was not required for the plaintiff to establish a case sufficient to withstand a defendant's motion for directed verdict. In *Jordan*, the plaintiff began experiencing symptoms later on the same day of her accident.

In the present case, Daniels testified that he began experiencing the onset of the carpal tunnel condition a few days after the collision, and he sought medical treatment within four months of the onset of his symptoms. Thus, this case is more closely analogous to *Madden* and *Jordan*, where a lay jury could conclude from common knowledge that a causal connection existed in light of the short lapse between Daniels' accident and his onset of symptoms and receipt of medical treatment. Given the standard of review which we must apply, we find that the trial court did not err in denying Hutcheson's motion for directed verdict or motion for j.n.o.v. on this issue.

Hutcheson further relies on *Magnan v. Miami Aircraft Support,*

217 Ga. App. 855, 856 (2) (459 SE2d 592) (1995). However, this case is also factually distinguishable. In *Magnan*, the question presented involved the continuing, long-term nature of an eye injury sustained by a plaintiff who had been exposed to pesticides. We held that the plaintiff "could not simply testify that the continuing eye problems were caused by the incident[, but] he was required to present expert medical testimony to make this showing. [Cits.]" Id. at 857 (2). This was especially true since the plaintiff's own physician testified that his initial eye injuries had healed and his later eye problems were not causally related by a reasonable probability. Id. In the present case, the question was not one regarding the longevity of Daniels' carpal tunnel condition, but simply whether this injury was caused by the collision. We find no error.

2. In his second enumeration, Hutcheson asserts the trial court erred in denying his motion for directed verdict and j.n.o.v. relating to the hernia injury. The record shows that Daniels first experienced problems in the area where the hernia was located "[w]ithin just a short few days" after the collision. According to Daniels, the pain got worse and worse. Daniels admitted he had a prior hernia operation in 1985, but testified that he had no problems with his hernia between 1985 and the time of the collision. Daniels further testified that because of the multiplicity of the medical problems he was experiencing and because he had to care for his wife following her heart attacks in 1991, he did not seek medical treatment for his hernia until March 1992. Thereafter, Daniels had to get another doctor before his hernia surgery was performed because his original doctor had a heart attack.

"Given the fact that [Daniels'] problems with [his hernia] ceased after [his] surgery in [1985] and did not recur until soon after the collision [in 1991], this case is more like *Jordan* and *Madden* than *Eberhart*. The jury did not need expert evidence to find that although the automobile accident did not cause the [hernia], it aggravated [it]. [Hutcheson was] not entitled to a directed verdict at the close of [the] evidence." *Cox v. Rewis*, 207 Ga. App. 832, 835 (2) (429 SE2d 314) (1993) (physical precedent only).

Based on the foregoing, including our analysis in Division 1, we conclude that the trial court did not err in denying Hutcheson's motion for directed verdict and motion for j.n.o.v. on the hernia claim.

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED FEBRUARY 11, 1997 — 

*Andrew & Threlkeld, Reid A. Threlkeld, Dillard, Bower & East, Bryant H. Bower, Jr., Joseph E. East*, for appellant.

*Morris & Tillman, Keith M. Morris*, for appellee.