[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10920
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-03044-JOF


TOM COOPER,
GAIL COOPER,

Plaintiffs-Appellants,

versus

MARTEN TRANSPORT, LTD.,
DWAYNE STROMAN,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(September 27, 2013)

Before CARNES, Chief Judge, BARKETT and BLACK, Circuit Judges.

PER CURIAM:

On April 21, 2010, husband and wife Tom and Gail Cooper were involved in a low-speed car accident with a tractor trailer driven by Dwayne Stroman on behalf of Marten Transport, Ltd.  After the collision, the Coopers sought treatment for back pain and ultimately underwent surgery.  The Coopers filed an Amended Complaint against Stroman and Marten Transport, alleging causes of action for negligence and negligent retention and hiring.  On appeal, the Coopers challenge (1) the district court's order excluding their expert witnesses' testimony regarding the cause of their back problems and need for medical treatment, and (2) the district court's grant of summary judgment to Marten Transport and Stroman. After review of the record and consideration of the parties' briefs, we affirm in part, reverse in part, and remand.

## I.  Exclusion of Expert Testimony[1]

The Coopers sought to introduce the testimony of three expert witnesses to establish that the 2010 collision caused their back injuries and subsequent need for surgery.  The district court excluded the causation testimony of the witnesses as unreliable under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

---

[1] We review the district court's exclusion of expert testimony for an abuse of discretion and will defer to the court's ruling unless it is manifestly erroneous.  *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1191 (11th Cir. 2010).

*Daubert* requires district courts to perform a gatekeeping function in assessing the reliability and consequent admissibility of an expert witness's testimony. *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1193 (11th Cir. 2010). In performing this function, the district court must conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* (quotation omitted). The *Daubert* Court enumerated several factors the district court may use to assess the reliability of proffered scientific testimony, including:

> (1) whether the theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) in the case of a particular scientific technique, the known or potential rate of error, and (4) whether the theory or technique is generally accepted by the relevant scientific community.

*Id.* at 1194 (quotation and alteration omitted); *see also Daubert*, 509 U.S. at 593-94. "This list, however, is not exhaustive, and district courts have substantial discretion in deciding how to test an expert's reliability." *Hendrix*, 609 F.3d at 1194 (quotation omitted).

## A. Dr. Hutton

The Coopers attempted to admit the testimony of Dr. William C. Hutton, a biomechanical engineer, who would have explained that the 2010 collision caused damage to the Coopers' spines and lumbar discs. Specifically, Dr. Hutton would

have opined that the combination of three stresses—the Coopers' obesity, the probable twisting of their spines to the left due to the fact that they were likely turned looking at oncoming traffic, and the flexion of their spines from being seated—"would have been enough to damage the disc[s] or exacerbate a pre-existing lumbar degenerative disc" when Stroman ran into them.

The district court excluded Dr. Hutton's testimony as unreliable, explaining that he spent only five hours reviewing case material, that a significant portion of that time was devoted to thinking, and that his methodology was to rely on his 40 years of experience.  On appeal, the Coopers argue the district court failed to account for Dr. Hutton's extensive experience and his many peer-reviewed publications wherein he articulated the principles underlying his opinion in this case.[2]

The district court did not abuse its discretion in excluding Dr. Hutton's testimony.  While "there are instances in which a district court may determine the reliability prong under *Daubert* based primarily upon an expert's experience and general knowledge in the field . . . at all times the district court must still determine

_____

[2] Although the Coopers argue that the district court erred in excluding Dr. Hutton's testimony as to both general and specific causation, we do not read Dr. Hutton's testimony as relating to general causation.  Dr. Hutton's one-page expert report related exclusively to the specific cause of the Coopers' injuries, and the focus of his deposition testimony related to his opinion that the 2010 collision caused the Coopers' current back problems.  Moreover, while the Coopers' initial brief references general and specific causation, it does not differentiate between the two, and the gravamen of their argument pertains to the specific circumstances of the 2010 collision.

the reliability of the opinion, not merely the qualifications of the expert who offers it." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1336 (11th Cir. 2010) (citation omitted).    Although Dr. Hutton has extensive experience in his field, his opinion in this case was not the product of a scientifically reliable methodology.  He generated his opinion that the 2010 collision caused the Coopers' back injuries, or aggravated preexisting problems, by learning and thinking about the Coopers' case and reaching a conclusion.  Dr. Hutton specifically admitted that in arriving at his opinion he did not conduct any testing.  Dr. Hutton's methodology was not reliable because it was not derived from the scientific method; rather, it amounted to asking the district court simply to "tak[e] the expert's word for it."  *See Hendrix*, 609 F.3d at 1201 (quotation omitted).  As we have repeatedly cautioned, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *Id.* (quotations and brackets omitted).

The district court's decision to exclude Dr. Hutton's testimony is bolstered by the fact that Dr. Hutton testified that simply stepping off a curb the wrong way could have created the same injuries for which the Coopers were treated.  Yet, Dr. Hutton did not explain how or why such a scenario was an unlikely cause of the Coopers' back problems in this case.  *See id.* at 1197 ("A district court is justified in excluding evidence if an expert utterly fails to offer an explanation for why the

5

proffered alternative cause was ruled out." (quotations and alterations omitted)).

On this record, we cannot say the exclusion of Dr. Hutton's testimony was

manifestly erroneous.  *See id.* at 1191.

*B. Dr. Pollydore and Dr. Kelley*

The Coopers also sought to admit the testimony of their treating physician,

Dr. Shevin Pollydore, and their surgeon, Dr. Lee Kelley, who would have testified

that the 2010 collision caused the Coopers' need for treatment.  Dr. Pollydore's

method of determining causation consisted of reviewing the Coopers' medical

histories and his examinations of them from before and after the 2010 collision.  In

describing his methodology, Dr. Kelley testified that doctors have studied basic

physics principles and the effects of force on the spine.  Dr. Kelley also stated that

he had looked at several photographs and had spoken with the Coopers.

After reviewing the Coopers' medical histories, the district court explained

that determining causation in this case was difficult because of the Coopers'

history of back pain, the fact that they both possessed degenerative back

conditions, and the fact that those conditions were compounded by the Coopers'

obesity and a different car accident in 2009.  As such, a review of the Coopers'

medical histories could not establish that the 2010 collision caused their current

back problems.  The court then concluded that causation could not be determined

through physical examination and the chronology of events alone.  The district

6

court further noted that neither Dr. Pollydore nor Dr. Kelley explained why they believed the 2010 collision caused the Coopers' injuries, rather than the 2009 collision or their preexisting conditions.

On appeal, the Coopers argue the district court rejected the doctors' use of nerve studies, x-rays, discograms, and other diagnostic tests as a valid methodology for finding causation. Moreover, both doctors conducted differential etiologies and considered the Coopers' medical histories and the 2009 collision as possible causes of the Coopers' current injuries. The Coopers contend the district court misapplied the law because it required them to completely rule out degenerative disc disorder as a contributing factor to their injuries, when, under Georgia law, they simply had to prove that the 2010 collision contributed to or aggravated their degenerative disc disorder.

As with Dr. Hutton's testimony, we cannot say the district court's exclusion of the medical doctors' testimony was manifestly erroneous. As an initial matter, the Coopers conflate their burden on causation, which is a matter of state law, with the reliability analysis required by *Daubert*, which is a separate inquiry governed by federal law. *See Hendrix*, 609 F.3d at 1193. We also note that, although the Coopers attempt to classify the doctors' methodology as that of a differential etiology, it is plain that no such methodology was, in fact, employed in this case. Differential etiology "is a medical process of elimination whereby the possible

7

causes of a condition are considered and ruled out one-by-one, leaving only one cause remaining." *Hendrix*, 609 F.3d at 1195. Drs. Pollydore and Kelley, by comparison, simply conducted physical examinations and reviewed the Coopers' medical histories to arrive at the conclusion that the 2010 collision caused the Coopers' injuries in this case. The doctors never compiled a comprehensive list of possible causes that they subsequently "systematically and scientifically rul[ed] out . . . until a final, suspected cause remain[ed]." *Kilpatrick*, 613 F.3d at 1342; *see also Hendrix*, 609 F.3d at 1197 (indicating that "an expert must provide reasons for rejecting alternative hypotheses using scientific methods and procedures and the elimination of those hypotheses must be founded on more than subjective beliefs or unsupported speculation" (quotation omitted)).

The methodology employed by Drs. Pollydore and Kelley was unreliable, as it amounted to simple reliance on a temporal relationship. The doctors concluded that, because the Coopers did not manifest their specific injuries or need for surgery until after the 2010 collision, the 2010 collision was the cause of those injuries. Such reasoning "is a classic 'post hoc ergo propter hoc' fallacy which 'assumes causation from temporal sequence.'" *Kilpatrick*, 613 F.3d at 1343. We have previously held that a district court did not abuse its discretion in rejecting such a methodology, or a methodology that consisted of reliance on medical literature and a temporal relationship. *See id.* at 1342-43. In this case, the district

8

court did not abuse its discretion in finding Dr. Pollydore's and Dr. Kelley's methodologies for establishing specific causation unreliable under *Daubert*. *See id.* at 1343-44 (explaining "the abuse of discretion standard 'thrives' when addressing *Daubert* issues.").

## II. Grant of Summary Judgment[3]

The district court granted Appellees' motion for summary judgment, finding that the Coopers' causation evidence was inadequate because it relied solely on the temporal sequence of the 2010 collision and the Coopers' subsequent injuries. On appeal, the Coopers argue they are "egg shell" plaintiffs, and the 2010 collision aggravated their preexisting back problems. Furthermore, Georgia law allows jurors to weigh the timing of a plaintiff's symptoms in determining proximate causation, and medical testimony is not needed to prove causation.

To establish a claim of negligence under Georgia law, the plaintiff must demonstrate "the existence of a duty on the part of the defendant, a breach of such duty, causation of the injury alleged, and damages as a result of the alleged breach of duty." *Wells Fargo Bank, N.A. v. Jenkins*, 744 S.E.2d 686, 687 (Ga. 2013). In general, plaintiffs need not produce expert evidence to prove causation in a negligence case. *Cowart v. Widener*, 697 S.E.2d 779, 784 (Ga. 2010). However,

---

[3] We review the district court's grant of summary judgment de novo, viewing the facts and drawing all reasonable inferences in the light most favorable to the nonmoving party. *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002).

expert testimony is necessary where the issue of causation presents "specialized medical questions," i.e., where "the link between a defendant's actions and the plaintiff's injury is beyond common knowledge and experience" and presents medical questions that "can be answered accurately only by witnesses with specialized expert knowledge." *Id.* at 785-86.  The Georgia Supreme Court has indicated that "whether an automobile collision caused a backache later the same day is not the type of medical question that requires expert testimony." *See id.* at 785 (citing *Jordan v. Smoot*, 380 S.E.2d 714 (Ga. Ct. App. 1989)).

Furthermore, it appears that Georgia law allows a jury to infer a causal connection between an accident and a plaintiff's injuries based on the sequence of events, particularly in the case of automobile collisions. *See Hutcheson v. Daniels*, 481 S.E.2d 567, 569 (Ga. Ct. App. 1997) ("[A] lay jury could conclude from common knowledge that a causal connection existed [between a car accident and the plaintiff's injuries] in light of the short lapse between Daniels' accident and his onset of symptoms and receipt of medical treatment."); *Jordan v. Smoot*, 380 S.E.2d 714, 714-15 (Ga. Ct. App. 1989); *cf. Cowart*, 687 S.E.2d at 791 ("A lay jury may reasonably infer a causal link between a sharp blow to the head of a patient whose condition appeared to be improving and his death from bleeding in his head a few hours later.").

The district court erred in finding that the Coopers presented inadequate evidence of causation. In this diversity case, the burden of proof regarding causation is governed by state law, and Georgia law allows the factfinder to draw a causal inference based on temporal proximity between an accident and an injury. Although the district court and Appellees rely on federal law discussing temporal proximity in the context of the reliability of an expert's methodology under *Daubert*, such cases are inapposite to the separate and distinct question of proving causation under state law.[4] Whether the Coopers suffered new or aggravated back problems shortly after a low-speed collision with a tractor trailer is the type of question a lay jury could decide based on common knowledge. *See Hutcheson*, 481 S.E.2d at 569. Furthermore, while Appellees presented evidence that the Coopers' injuries may have been the result of preexisting conditions or the 2009 collision, such evidence created a dispute of material fact that the district court was not authorized to resolve at the summary judgment stage. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter."); *Cowart*, 687 S.E.2d at 791 (explaining that, where a defendant

---

[4] While it may seem contradictory to conclude that temporal proximity is an insufficient basis for an expert's testimony regarding causation, yet a permissible basis for a jury to determine causation on its own, we note that special concerns accompany the admission of expert testimony, which may have a "powerful and potentially misleading effect" and "may be assigned talismanic significance in the eyes of lay jurors." *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004) (en banc).

11

maintained that acute leukemia caused a patient's death, rather than a slip and fall, "[a] defense expert may create a material issue as to whether the blow was the actual cause of death, but in that event, the jury resolves the disputed fact; it does not require summary judgment for the defendant"); *Greenway v. Northside Hosp., Inc.*, 730 S.E.2d 742, 751 (Ga. Ct. App. 2012) ("The question of proximate cause is usually reserved for the jury and can be decided on summary judgment only in plain and indisputable cases." (quotation omitted)).  Accordingly, the district court's grant of summary judgment is reversed.

The district court resolved Appellees' motion for summary judgment on causation grounds and it therefore did not reach the issue of the Coopers' claim for negligent hiring and retention.  We leave it to the district court to consider that claim in the first instance on remand.

### *III. Conclusion*

For the foregoing reasons, we affirm the district court's order excluding the Coopers' expert testimony, reverse the district court's grant of summary judgment, and remand for further proceedings.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

12