**422**

**Frank S. SCOTT, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. No. 544–P.**

United States District Court,
N. D. Florida, Pensacola Division.

Jan. 15, 1955.

Gowen, Conyers, Fendig & Dickey, Brunswick, Ga., for plaintiff.

G. Harrold Carswell, U. S. Atty., Tallahassee, Fla., Hayford O. Enwall, Asst. U. S. Atty., Gainesville, Fla., for defendant.

DE VANE, Chief Judge.

This is a suit brought to recover damages for injuries sustained by plaintiff as the result of an automobile accident. The facts in so far as the accident are concerned are, in general, not in dispute.

On August 30, 1951 plaintiff was driving a motor vehicle within the confines of Eglin Air Force Base in Okaloosa County, Florida. At the time there was considerable traffic on the main Base highway and a traffic officer was in control of the traffic moving along said highway and on the cross-street upon which plaintiff was driving his automobile. When plaintiff reached the intersection of his street with the main Base highway the traffic on his street was stopped by the traffic officer. An automobile operated by an employee of defendant was immediately behind the automobile of plaintiff and the driver of that automobile failed to notice in time that the traffic in front of him had been brought to a stop and he drove the vehicle of defendant, with some force, into the rear of the vehicle of plaintiff, knocking plaintiff's vehicle into the automobile in front of him and damaging same to some extent. The force with which the defendant's automobile struck that of plaintiff was sufficient that it caused plaintiff to lunge backward and forward with a "whiplash" of his head that injured his neck to some extent. The force was sufficient to also dislodge glasses of plaintiff and throw them into the rear of the automobile. Plaintiff claims momentary unconsciousness, but the evidence shows that he rather promptly got out of his own automobile without any assistance.

The government authorities promptly thereafter sent plaintiff to the Base Hospital on the Field where he was examined and advised by the physicians who ex-

amined him that he had suffered no substantial injury; that he would have headaches for awhile and his neck would undoubtedly be quite sore for a few days and pain him, but that he should overcome that condition within a very short time.

The evidence shows further that plaintiff, the day following the accident, returned to his home in Perry, Florida. Plaintiff testifies that he continued to suffer severe headaches until about January 20, 1952 when the pain in his head became so severe he became ill and consulted Dr. R. J. Green, who examined him and recommended that he go to Thomasville, Georgia promptly and place himself under the care of Dr. Earnest F. Wahl of that City. Plaintiff complied with this direction and entered the Archibold Hospital at Thomasville, Georgia on January 21, 1952, and placed himself under the care of Dr. Wahl. He remained in the hospital until January 31, 1952, and some time between his entry and his leaving suffered a brain hemorrhage, resulting in paralysis of his left side. After he suffered the stroke, Dr. Wahl recommended that he be taken to Jacksonville, Florida and placed under the care of Dr. J. G. Lyerly, a neuro-surgeon of that City. This suggestion was complied with and the plaintiff was taken to St. Vincent's Hospital in Jacksonville and placed under the care of Dr. Lyerly, where he remained until some time in May, when he was discharged and permitted to return to his home in Perry, Florida.

At the conclusion of the testimony in the case the court promptly adjudged the defendant guilty of negligence and submitted to counsel for the respective parties the question of whether plaintiff's condition of partial paralysis was the proximate result of the accident and whether plaintiff had sustained the burden of proving that this is so.

The medical testimony on the issue is in conflict, and it is this conflict that makes the case so difficult. Plaintiff called as a witness Dr. Wahl, who testified as to his treatment of the plaintiff while at the Archibold Hospital at Thomasville, Georgia. His testimony as to whether the accident contributed to or brought about the paralysis was most unsatisfactory. He was merely asked the simple question as to whether "it was possible for Mr. Scott to have received some injury in the automobile accident which caused the headaches and later hemorrhage", to which he gave the following answer: "Yes, such an occurrence was possible."

Plaintiff also called as a witness, Dr. Paul C. Mendoza of Jacksonville, Florida. Dr. Mendoza testified that he examined plaintiff in February, 1952, July, 1952 and February, 1954. He was first called into the case in February, 1952 by Dr. Lyerly. Dr. Mendoza specializes in surgery and he was present in February, 1952 when Dr. Lyerly drilled two trephine holes into plaintiff's skull for exploratory purposes. The record is silent as to the purpose of the July, 1952 examination. The February, 1954 examination was made by Dr. Mendoza for the purpose of checking the progress made by plaintiff and qualifying him to testify as a witness in this cause. Dr. Mendoza testified that in his opinion the automobile accident contributed directly to bringing on the hemorrhage that produced the stroke. He admitted on cross-examination that he had not specialized in neuro-surgery and did not profess to be an expert in that field of medicine.

Defendant called Dr. C. Ashley Bird of Jacksonville, Florida, as its medical expert. Dr. Bird specializes exclusively in neuro-surgery. He testified to a background of four years of specialized hospital training and four years of practice in neuro-surgery. He testified to the treatment of numerous patients during hospital training and his four years' practice. Dr. Bird gave as his opinion that the accident plaintiff suffered on August 30, 1951 had no connection whatever with the hemorrhage and stroke on or about January 30, 1952. He went into details as to the reasons supporting his opinion, which it is unnecessary to set out here.

Defendant also had the plaintiff examined by two Navy physicians, Drs. Coyle and Sewell of the Tyndall Air Force Base Hospital near Panama City, Florida. This examination was made September 11, 1953. Defendant called as a witness only Dr. Coyle, but he testified that he and Dr. Sewell were in complete accord on the result of their examination. Dr. Coyle testified that he is a general practitioner and has been such for a number of years. He was inducted into the Army during the Second World War and active in the medical corps. Some time following his discharge from the Army after the War he was called back into Service and again became identified with the medical corps, and, as stated above, was stationed at Tyndall Air Force Base, when the examination was made by him of plaintiff. Dr. Coyle gave it as his positive opinion as a general practitioner, that the hemorrhage and stroke had no connection whatever with the accident.

All medical witnesses are in agreement that plaintiff, at the time of the accident and at the time of the hemorrhage and stroke, was suffering with arteriosclerosis; that his condition in this regard was what might be expected from a man of his age.

Beginning with the decision of Judge Taft (later Chief Justice of the Supreme Court of the United States) in Ewing v. Goode, C.C., 78 F. 442, down to the present time, it has been consistently held that whether there was a causal connection between an accident involving one suffering with a mysterious or dreaded ailment such as arteriosclerosis, followed by a subsequent hemorrhage and stroke caused by the arteriosclerosis condition, is a question with respect to which only medical experts with training, skill and experience could form a consistent judgment and express an intelligent opinion. For references to the many cases on this subject, see Preferred Accident Ins. Co. v. Combs, 8 Cir., 76 F.2d 775; Mutual Life Ins. Co. v. Still, 8 Cir., 78 F.2d 748; Bearman v. Mutual Benefit Health & Accident Association, 10 Cir., 186 F. 2d 662.

The authorities cited above make it clear to the court that plaintiff completely failed to carry the burden of proof by competent medical testimony tying the hemorrhage and stroke with the accident. The tragic part of the case is that plaintiff failed to call as a witness his own neuro-surgeon, Dr. Lyerly, who treated him for several months following the stroke, or any other qualified neuro-surgeon to testify in his behalf. The condition of plaintiff cannot but awaken the sympathy of any one, but I must hold that there is no evidence before this court legally sufficient to tie the accident and the stroke together.

The evidence in the case shows that plaintiff suffered a minor fracture of a vertebra in his neck, which was produced by the whiplash at the time of the accident. While this condition gave him a stiff and sore neck for a short time and brought on headaches continuously, according to his testimony, until he became ill and consulted his physician, Dr. Green, on or about January 20, 1952, plaintiff, during the entire intervening period, never consulted Dr. Green or any other physician with reference to his condition. He testified that during this period he was not as physically active as he had been prior to the accident, but that he had never been forced to take to his bed as the result of it. Plaintiff did testify, however, that he had to employ other labor during this period because of his inability to do the hard work of a plumber he was accustomed to doing before the accident.

It is the opinion of this court that plaintiff suffered considerable pain as the result of the accident, which was present for at least part of the time between the accident and the day he reported to the hospital at Thomasville, Georgia. Plaintiff also sustained certain expenses in his effort to carry on his business through this period and he is entitled to full compensation for his pain, suffering and business losses.

It is the opinion of the court that $2,500 will amply compensate plaintiff for these damages and a judgment will be awarded plaintiff in that amount.

The court further finds and holds that counsel for plaintiff are entitled to a fee of 20% of the judgment awarded plaintiff for their services in this case.