JOAN A. LENARD, UNITED STATES DISTRICT JUDGE
THIS CAUSE is before the Court on Defendant NCL (Bahamas) Ltd.'s ("Defendant" or "Norwegian") Motion for Summary Judgment, ("Motion," D.E. 42), filed June 16, 2017. Plaintiff Stephen Emmet O'Brien filed a Response on July 8, 2017, ("Response," D.E. 52), to which Defendant filed a Reply on June 17, 2017, ("Reply," D.E. 54). Upon review of the Motion, Response, Reply, and the record, the Court finds as follows.
I. Background[1]
On August 7, 2015, Plaintiff was a passenger aboard Defendant's cruise ship, the Norwegian Sky . (Def.'s Facts ¶ 1.) According to Plaintiff's deposition testimony, he walked into a shallow children's pool and splashed water on his face, chest, back, and head. (Id. ¶ 9.) He testified that the water smelled "really chlorinated, ... like a heavy smell of chemicals." (O'Brien Dep. at 63:14-16.) He also testified that he observed a "white foamy" substance, "like a soap residue," near the children's pool. (Id. at 69:10-16.) Later the same day, Plaintiff felt a burning pain in his feet, (id. at 73:25), and noticed his feet were blistering, (Def.'s Facts ¶ 11). There were no other similar injuries reported on the day of the incident or during the subject cruise, (id. ¶ 20), and there were no other similar burn incidents being reported on the Norwegian Sky for the three years prior to the subject incident, (id. ¶ 12).
On December 3, 2016, Plaintiff filed the operative Corrected Amended Complaint for Negligence, (D.E. 22), in which he alleges to have sustained chemical burns to his feet from exposure to "caustic" chemicals used to clean Norwegian's decks and used at unreasonable levels in Norwegian's Jacuzzi,[2] and from the hot pool deck. (Def.'s Facts ¶ 6.)
To clean the decks, Norwegian uses only soap and water. (Id. ¶ 23.) To clean the pools, Norwegian utilizes the ProMinent water treatment control system which allows for the continuous monitoring and automatic delivery of pool chemicals based upon predetermined levels. (Id. ¶ 14.) Norwegian further performs manual chemical checks at each swimming pool every four hours and at the Jacuzzi every hour in order to validate the automatic readings of the ProMinent system. (Id. )
*1305 Plaintiff was diagnosed with type-two diabetes about eight years prior to the subject cruise. (Id. ¶ 3.) Although Plaintiff disputes Norwegian's statement that "Plaintiff has a long and well-documented history of not controlling his diabetes," (id. ¶ 4), Plaintiff's treating endocrinologist, Vivian Rose, (see D.E. 80 ¶ 32), testified at her deposition that when she saw him on May 29, 2015, his blood sugar was "unacceptably high," indicating that "he had not had any control of his diabetes [.]" (D.E. 54-1 at 21:22-25.) Additionally, Plaintiff's primary care physician, Dr. James Prine, (see D.E. 80 ¶ 23), testified at his deposition that when he saw Plaintiff in 2010 and 2012, Plaintiff's diabetes was out of control, (Prine Dep. at 16:21-24; 18:2-8). Prior to the subject cruise, two of Plaintiff's doctors advised him to take precautions with regard to his feet. (Def.'s Facts ¶ 5.)
II. Legal Standard
On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addition, under Federal Rule of Civil Procedure 56(f)(1), the Court may grant summary judgment for the non-moving party "[a]fter giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f)(1) ; see also Gentry v. Harborage Cottages-Stuart, LLLP, 654 F.3d 1247, 1261 (11th Cir. 2011). The Supreme Court has explained the summary judgment standard as follows:
[T]he plain language of [ Rule 56 ] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.
Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation omitted). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable fact-finder could return a verdict for the nonmoving party. Id. at 248, 106 S.Ct. 2505 ; see also Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).
The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323, 106 S.Ct. 2548. Once the movant makes this initial demonstration, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Id. at 324, 106 S.Ct. 2548 ; see also Fed. R. Civ. P. 56(c). In *1306 meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Id. at 587, 106 S.Ct. 1348. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Id.
III. Applicable Law
"Federal maritime law applies to actions arising from alleged torts 'committed aboard a ship sailing in navigable waters.' " Smolnikar v. Royal Caribbean Cruises Ltd., 787 F.Supp.2d 1308, 1315 (S.D. Fla. 2011) (citing Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1321 (11th Cir. 1989) ).
General maritime law is "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." See East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864-65, 106 S.Ct. 2295, 90 L.Ed. 2d 865 (1986). See also Brockington v. Certified Elec., Inc., 903 F.2d 1523, 1530 (11th Cir. 1990). In the absence of well-developed maritime law pertaining to [Plaintiff's] negligence claims, [the Court] will incorporate general common law principles and Florida state law to the extent they do not conflict with federal maritime law. See Just v. Chambers, 312 U.S. 383, 388, 61 S.Ct. 687, 85 L.Ed. 903 (1941) ("With respect to maritime torts we have held that the State may modify or supplement the maritime law by creating liability which a court of admiralty will recognize and enforce when the state action is not hostile to the characteristic features of the maritime law or inconsistent with federal legislation."). See also Becker v. Poling Transp. Corp., 356 F.3d 381, 388 (2nd Cir. 2004) ("federal maritime law incorporates common law negligence principles generally, and [state] law in particular"); Wells v. Liddy, 186 F.3d 505, 525 (4th Cir. 1999) (in the absence of a well-defined body of maritime law relating to a particular claim, the general maritime law may be supplemented by either state law or general common law principles).
Id.; see also Hesterly v. Royal Caribbean Cruises, Ltd., 515 F.Supp.2d 1278, 1282 (S.D. Fla. 2007).
IV. Discussion
Although the Parties do not address them individually, the Amended Complaint contains the following claims for relief:
• Count I: General Maritime Law Negligence-Failure to Provide a Reasonably Safe Vessel;
• Count II: Negligent Failure to Warn of a Dangerous Condition;
• Count III: Negligent Design;
• Count IV: Negligent Method of Operation;
• Count V: Negligent Failure to Maintain.
(D.E. 22.) The basis for each of these claims is that Plaintiff's injuries were caused by the hot pool deck, chemicals from the Jacuzzi, and/or caustic chemicals used for sanitizing the pool deck.[3] (D.E. 22 ¶¶ 10-17.)
*1307 "To satisfy the burden of proof in a negligence action, plaintiff must show: (1) that defendant owed plaintiff a duty; (2) that defendant breached that duty; (3) that this breach was the proximate cause of plaintiff's injury; and (4) that plaintiff suffered damages." Isbell v. Carnival Corp., 462 F.Supp.2d 1232, 1236 (S.D. Fla. 2006) (citing Hasenfus v. Secord, 962 F.2d 1556, 1559-60 (11th Cir. 1992) ). With regard to the duty element, the Eleventh Circuit has stated that a cruise operator owes its passengers "ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition ...." Keefe, 867 F.2d at 1322 ; see also Chaparro v. Carnival Corp., 693 F.3d 1333, 1336 (11th Cir. 2012).
Norwegian argues that it is entitled to summary judgment because: (1) there is no evidence of a dangerous condition; (2) there is no evidence that Norwegian had notice of a dangerous condition; (3) the alleged hot deck was an open and obvious *1308 condition; and (4) there is no evidence of causation. (Mot. at 10-25.)
a. No evidence of a dangerous condition
First, Norwegian argues that there is no evidence of a dangerous condition. (Mot. at 10.) Plaintiff argues that there is evidence the pool chemicals were at improperly high levels on the date in question due to the strong smell of chlorine he experienced. (Resp. at 9.) Plaintiff further argues that he gave deposition testimony that he observed a white, foamy residue near the children's pool. (Id. ) He also argues that photographs of his injuries constitute evidence of a dangerous condition, but he provides no citation as to where these photographs can be located on the record.[4] (Id. ) Finally, he argues that to the extent Norwegian argues that the hot deck was open and obvious, he can still recover damages under comparative negligence principles. (Id. at 10.)
Thus, the issue is whether evidence that Plaintiff smelled chlorine, saw (but did not step in) a foamy white substance, and suffered injuries to his feet creates a genuine issue of material fact as to whether a dangerous condition existed. In Lindsey v. Highwoods Realty, L.P., Civil Action No. 3:11CV447-HEH, 2012 WL 368328 (E.D. Va. Feb. 3, 2012), the court found that similar evidence was insufficient to survive summary judgment. In that case, the plaintiff alleged that she was injured due to exposure to Merphos, an "organophosphate herbicide" used in pesticides, in the building where she rented office space. Lindsey, 2012 WL 368328 at *1. She claimed that one night she entered the building, smelled a "strange gaseous odor," and observed a number of dead insects. Id. She claimed to experience several adverse health symptoms and, five months later, she had the building tested for chemicals. Id. After the tests revealed the presence of Merphos in the building, the plaintiff sued for premises liability and negligence. Id. The defendants claimed they never used Merphos in any of the pesticides they used, and when they had their own testing done, the results revealed no Merphos in the building. Id. at *2. The company that tested the building on behalf of the plaintiff later stated that the Merphos it detected was likely a "false positive." Id. at *3.
On the defendants' motion for summary judgment, the plaintiff relied on the gaseous odor she smelled, the dead bugs, and the fact that she sustained injuries consistent with "organophosphate poisoning." Id. The court found that this was insufficient to survive summary judgment:
In sum, Plaintiff attempts to string together a few pieces of circumstantial evidence to meet her initial burden of proving a reasonable jury could find that a dangerous condition-the pesticide Merphos-existed in her office space. However, the fact remains that Plaintiff has yet to produce a single piece of evidence or expert testimony that Merphos, or any other toxic chemical, was present in the office building. Although Plaintiff has produced an expert that will testify that she suffers from exposure to a toxic substance, there is simply no evidence as to where that exposure may have occurred. Plaintiff's testimony that she smelled something unusual and noticed dead bugs in the building simply does not rise above mere speculation, even coupled with her expert medical diagnosis. Thus, no reasonable juror *1309 could find that a dangerous condition existed in the building.
Id. at *4. Consequently, the court granted the defendants' motions for summary judgment. Id.
Likewise, here, Plaintiff has failed to produce any admissible evidence that a dangerous condition existed on the deck of the cruise ship or in the pool water. Although Plaintiff testified that when he walked into the children's pool and splashed water on himself he detected a "really chlorinated, real bleachy type of" chemical smell, (D.E. 42-1 at 63:13-16), one can reasonably expect chlorine in pool water, and there is no evidence that the chemicals in the pool were at unreasonably high levels. See Luther v. Carnival Corp., 99 F.Supp.3d 1368, 1371 (S.D. Fla. 2015) (requiring cruise ship slip and fall victim to present evidence that pool deck was "unusually, extremely, or unreasonably slippery," because one can reasonably expect a pool deck to be wet). Moreover, there is no evidence as to what would constitute unreasonably high levels of chlorine (or any other chemical) in the pool.
Rather, the undisputed evidence establishes: (1) "Norwegian uses the ProMinent system, which allows for the continuous monitoring/release of pool chemicals based upon predetermined set points, which also eliminates the need for pouring chemicals directly into the pool from the deck" (Def.'s Facts ¶ 14); and (2) in addition to the ProMinent system, Norwegian "performs manual chemical checks at each swimming pool every four (4) hours and at the Jacuzzi's every hour in order to validate the automatic controller readings," (id. ¶ 15). There is no evidence that the ProMinent system was not working properly on the date in question, or that the manual chemical readings revealed unreasonably high levels of chemicals.
And although Plaintiff testified that he saw a "white foamy type thing" on the deck near the pool, (D.E. 42-1 at 69:16), there is no evidence that this "white foamy type thing" presented a dangerous condition,[5] and regardless, he does not allege that he stepped in it.
It is further undisputed that there were no other similar injuries reported on the day of the incident or during the subject cruise, (id. ¶ 20), and there were no other similar burn incidents being reported on the Norwegian Sky for the three years prior to the subject incident, (id. ¶ 12).
Finally, the mere fact that Plaintiff suffered an injury is insufficient to establish that a dangerous condition existed. See Isbell, 462 F.Supp.2d at 1237 ("The mere fact that an accident occurred does not give rise to a presumption of a dangerous condition.") (citations omitted).
For these reasons, the Court finds that Plaintiff has not sustained his burden of presenting evidence sufficient to create a genuine issue of material fact as to the existence of a dangerous condition. See Thomas v. NCL (Bahamas) Ltd., No. 13-24682-CIV, 2014 WL 3919914, at *3 (S.D. Fla. Aug. 11, 2014) (finding that the plaintiff who claimed to have been bitten by bedbugs on a cruise had not sufficiently alleged the existence of a dangerous condition sufficient to survive summary judgment because there was no evidence of bedbugs on the cruise ship). Indeed, Plaintiff has presented no admissible evidence that his injuries were caused by chemicals.[6] ibr.US_Case_Law.Schema.Case_Body:v1">See id. (finding that plaintiff had not *1310 sufficiently alleged the existence of a dangerous condition, specifically, bedbugs on a cruise, because although there was evidence that she suffered "red itching spots," there was no evidence that they were caused by bedbugs); Lindsey, 2012 WL 368328 at *4 (finding that evidence the plaintiff suffered an injury consistent with organophosphate poisoning was insufficient to establish that an organophosphate pesticide was present in her office building).
b. No evidence that Norwegian had notice of a dangerous condition
Next, Norwegian argues that even if there is evidence that a dangerous condition existed, there is no evidence that Norwegian had notice of it. (Mot. at 13.)
The duty of care a ship operator owes its passengers "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." Keefe, 867 F.2d at 1322. "The 'mere implication of actual or constructive notice is insufficient to survive summary judgment'; rather, a plaintiff must show 'specific facts demonstrating, at least, that the purported defect was detectable with sufficient time to allow for corrective action.' " Lipkin v. Norwegian Cruise Line Ltd., 93 F.Supp.3d 1311, 1323 (S.D. Fla. 2015) (quoting Cohen v. Carnival Corp., 945 F.Supp.2d 1351, 1357 (S.D. Fla. 2013) ); see also Taiariol v. MSC Crociere, S.A., Case No. 0:15-cv-61131-KMM, 2016 WL 1428942, at *5 (S.D. Fla. Apr. 12, 2016) ; Thomas, 2014 WL 3919914, at *4.
Norwegian argues that there is no record evidence that it had actual or constructive notice of a risk-creating condition in the area where Plaintiff claims to have been burned. (Mot. at 14-15.)
Specifically, there is no record evidence that any other person previously sustained a burn-chemical or thermal-to their feet while on the subject pool deck *1311 aboard the Norwegian Sky for the three-year period prior to the alleged incident. There is no record evidence that the chemical levels in the Jacuzzi/children's pool were at harmful levels or unreasonably dangerous at any time prior to the day of the incident. There is no record evidence of chemicals leaking from the Norwegian Sky's chemical room onto the subject deck at any time prior to the date of Plaintiff's alleged incident. There is no record evidence that any one else was injured by chemicals leaking from the Norwegian Sky's chemical room onto the subject deck at any time prior to the date of Plaintiff's alleged incident.
(Id. at 15.) Plaintiff argues that there is evidence that Norwegian had constructive notice of a dangerous condition-specifically, his deposition testimony that there were Norwegian employees near the area where he was burned for at least thirty minutes, "which is enough time to notice chemicals leaking around the pool area." (Resp. at 10-11.)
However, as explained in Footnote 3, supra, the theory that Plaintiff was injured by a chemical leak from a storage shed near the pool area was not pled in the Amended Complaint and is not properly before the Court. And even if it was, it is undisputed that there is no evidence of such a chemical leak, (Def.'s Facts ¶ 25), or that anyone else was injured by chemicals leaking from the storage room on the subject cruise or at any time prior to the subject incident, (id. ¶¶ 29-30). It is further undisputed that there is no evidence that there were any chemicals in the storage room capable of burning Plaintiff's feet. (Id. ¶ 27.) Finally, it is undisputed that there is no evidence of other similar burn incidents reported on the Norwegian Sky during the subject cruise or for the three years prior to the subject incident. (Id. ¶¶ 12, 20.)
Accordingly, the Court finds that there is insufficient evidence from which a reasonable jury could conclude that Norwegian was on notice of a dangerous condition. See Taiariol, 2016 WL 1428942, at *4-6 (entering summary judgment in favor of defendant because the plaintiff failed to present evidence that cruise operator had constructive notice of dangerous metal stair nosing she slipped on because there had been no prior similar falls); Thomas, 2014 WL 3919914, at *4 (entering summary judgment in favor of defendant because even assuming bedbugs were present on the cruise ship, the plaintiff failed to present evidence that cruise operator knew or should have known of the existence of bedbugs); Cohen, 945 F.Supp.2d at 1355-56 (entering summary judgment in favor of defendant because the plaintiff "presented no evidence that Carnival had actual or constructive notice of the alleged risk-creating condition posed by the steps at the end of the gangplank").
c. Open and obvious hot deck
A cruise operator has no duty to warn of dangers that are open and obvious. Smith v. Royal Caribbean Cruises, Ltd., 620 Fed.Appx. 727, 730 (11th Cir. 2015) ; Lugo v. Carnival Corp., 154 F.Supp.3d 1341, 1346 (S.D. Fla. 2015) ; Lancaster v. Carnival Corp., 85 F.Supp.3d 1341, 1344 (S.D. Fla. 2015). "Open and obvious conditions are those that should be obvious by the ordinary use of one's senses." Lancaster, 85 F.Supp.3d at 1344. "The obviousness of a danger and adequacy of a warning are determined by a 'reasonable person' standard, rather than on each particular plaintiff's subjective appreciation of the danger. Individual subjective perceptions of the injured party are irrelevant in the determination of whether a duty to warn existed."
*1312 John Morrell & Co. v. Royal Caribbean Cruises, Ltd., 534 F.Supp.2d 1345, 1351 (S.D. Fla. 2008) ; see also Flaherty v. Royal Caribbean Cruises, Ltd., Case No. 15-22295-CIV-LENARD, 2015 WL 8227674, at *3 (S.D. Fla. Dec. 7, 2015).
Norwegian argues that the allegedly hot pool deck was an open and obvious condition. (Mot. at 15.) In his Response, Plaintiff concedes the point but states that he can still recover damages under comparative negligence principles. (Resp. at 10 (citing Johnson v. Carnival Corp., Case No. 07-20147-CIV-UNGARO, 2007 WL 9624463, at *3 (S.D. Fla. Dec. 13, 2007).) Plaintiff does not elaborate on this statement, and while recovery may be available under comparative negligence principles where it can be shown that the defendant was negligent in some manner other than failing to warn of a dangerous condition, see Johnson, 2007 WL 9624463, at *3, there is no evidence that Norwegian negligently created a hot pool deck. In this regard, the Amended Complaint alleges that the deck became hot from "exposure to the sun." (Am. Compl. ¶ 13.)
Accordingly, the Court finds that there was no duty to warn of a dangerously hot pool deck because the condition was open and obvious. See Luther, 99 F.Supp.3d at 1371 (finding that cruise operator had no duty to warn of "an outside deck that was wet from rain and therefore could be slippery").
d. Causation
Finally, Norwegian argues that it is entitled to summary judgment because there is no evidence regarding what caused Plaintiff's injuries. (Mot. at 20-25.)
As previously stated, to prevail on a claim of negligence, Plaintiff must prove not only that Norwegian breached a duty it owed to Plaintiff, but also that the breach proximately caused Plaintiff's injuries. Isbell, 462 F.Supp.2d at 1236. This requires the plaintiff to introduce expert testimony regarding medical causation where the injury is beyond the common knowledge and experience of a layperson. See Kellner v. NCL (Bahamas), Ltd., CASE NO. 15-23002-CIV-ALTONAGA/O'Sullivan, 2016 WL 4440510, at *1 (S.D. Fla. Aug. 22, 2016) ; see also Jones v. Royal Caribbean Cruises, Ltd., No. 12-20322-CIV, 2013 WL 8695361, at *6 (S.D. Fla. Apr. 4, 2013) ("There is no doubt that an essential element of Plaintiff's negligence claim is his burden of introducing expert testimony to establish medical causation.") (citing Drury v. Cardiac Pacemakers, Inc., No. 8:02CV933T-17MAP, 2003 WL 23319650, at *3 (M.D. Fla. June 3, 2003) ("In a negligence case, in order to establish causation, expert testimony is necessary. An expert witness must be able to state an opinion, based on a reasonable degree of medical certainty, that the defendant's negligence is more likely that anything else to have been the cause of plaintiff's injuries."); Schmaltz v. Norfolk & W. Ry. Co., 896 F.Supp. 180, 182 (N.D. Ill.1995) (noting that "[e]xpert testimony is generally required to establish a causal connection between the accident and injury 'unless the connection is a kind that would be obvious to laymen, such as a broken leg from being struck by an automobile' ") (citing 4 F. Harper, F. James, O. Gray, The Law of Torts § 20.2 (2d ed. 1986)); Scott v. United States, 127 F.Supp. 422, 424 (N.D. Fla.1955) ("it has been consistently held that whether there was a causal connection between an accident ... [and a sustained injury] ... is a question with respect to which only medical experts with training, skill, and experience could ... express an intelligent opinion")); see also Cooper v. Marten Transp., Ltd., 539 Fed.Appx. 963, 967-68 (11th Cir. 2013) ("[E]xpert testimony is necessary where the issue of causation presents 'specialized *1313 medical questions,' i.e., where 'the link between a defendant's actions and the plaintiff's injury is beyond common knowledge and experience' and presents medical questions that 'can be answered accurately only by witnesses with specialized expert knowledge.' ") (citations omitted) (Georgia law).
Norwegian argues that Plaintiff merely speculates that he was burned by chemicals in the pool or on the pool deck, but there is no evidence supporting this assumption, and speculation does not create a genuine issue of material fact. (Id. at 20 (citing Daniels v. Twin Oaks Nursing Home, 692 F.2d 1321, 1324 (11th Cir. 1982) ; Gordon v. Target Corp., No. 07-80412-CIV, 2008 WL 2557509, at *6 (S.D. Fla. June 23, 2008).) It further argues that because Plaintiff's injuries are of a type that could have many different causes, an expert witness must be able to state, based on a reasonable degree of medical certainty, that the defendant's negligence is more likely than anything else to have caused Plaintiff's injuries. (Id. at 23 (citing Drury, 2003 WL 23319650, at *3 (M.D. Fla. June 3, 2003) ).
Plaintiff wholly failed to respond to Norwegian's argument regarding causation. Plaintiff's Amended Witness Disclosures reveals that he did not hire an expert witness to testify regarding the cause of his injuries.[7] (See D.E. 80.) And the Court finds that his failure to hire an expert is dispositive of the causation issue because the cause of Plaintiff's injuries is beyond the understanding or observations of a layperson. See Rivera v. Royal Caribbean Cruises, Ltd., CASE NO. 15-24173-CIV-SEITZ/TURNOFF, 2016 WL 7176644, at *3 (S.D. Fla. Dec. 8, 2016) (granting summary judgment in favor of cruise operator where the plaintiff failed to offer expert testimony regarding the cause of her injuries); Kellner v. NCL (Bahamas), Ltd., CASE NO. 15-23002-CIV-ALTONAGA/O'Sullivan, 2016 WL 4440510, at *1 (S.D. Fla. Aug. 22, 2016) (granting directed verdict in favor of cruise operator where the plaintiff failed to introduce expert medical testimony regarding the cause of her injuries). Even if it was undisputed that a particular injury was a burn, the average layperson would not know by observation or common experience whether the burn was caused by sun exposure, contact with a hot surface, boiling water, dangerous chemicals, or otherwise.[8]
e. Res ipsa loquitur
Finally, Plaintiff argues in his Response that a reasonable jury could find that Norwegian was negligent based on the doctrine of res ipsa loquitur. (Resp. at 12.)
"A finding of negligence based on the doctrine of res ipsa loquitur in the admiralty context is not totally unique but neither is it routine." United States v. Baycon Indus., Inc., 804 F.2d 630, 633 (11th Cir. 1986) (citing Johnson v. United States, 333 U.S. 46, 68, 68 S.Ct. 391, 92 L.Ed. 468 (1948) ; United States v. Nassau Marine Corp., 778 F.2d 1111, 1115 (5th Cir. 1985) ). "The doctrine was formed to allow permissible inferences to be drawn from unexplained events." Id. (citing Johnson, 333 U.S. at 49, 68 S.Ct. 391 ). The doctrine applies if: "(1) the injured party was without fault, (2) the instrumentality causing the injury was under the exclusive *1314 control of the defendant, and (3) the mishap is of a type that ordinarily does not occur in the absence of negligence." Id.; see also Cie. Des. Messageries Maritimes v. Tawes, 205 F.2d 5, 7-8 (5th Cir. 1953) ("[W]hen a thing causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as in the ordinary course of things does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care.' ")[9] (quoting San Juan Light & Transit Co. v. Requena, 224 U.S. 89, 98-99, 32 S.Ct. 399, 56 L.Ed. 680 (1912) ); Terry v. Carnival Corp., 3 F.Supp.3d 1363, 1372 (S.D. Fla. 2014). A cruise operator's lack of actual or constructive knowledge of a risk-creating condition does not, as a matter of law, preclude a plaintiff from arguing that the doctrine applies. Millan v. Celebration Cruise Operator, Inc., 212 F.Supp.3d 1301, 1306 (S.D. Fla. 2015). "If the plaintiff establishes an inference of negligence under the rule, then the burden shifts to the defendant to rebut it." Id. (citing Baycon Indus., 804 F.2d at 634 ).
First, Norwegian argues that the Court should not consider Plaintiff's res ipsa loquitur argument because it was not alleged in the Amended Complaint and was raised for the first time in Plaintiff's Response to the Motion for Summary Judgment. (Reply at 7 (citing Barrett v. JP Morgan Chase Bank, CASE NO. 14cv2976 DMS (WVG), 2016 WL 3523046, at *4 (S.D. Cal. June 27, 2016) ).) Norwegian cites no authority within the Eleventh Circuit, and the Court has found none, holding that a plaintiff must plead res ipsa loquitur in his complaint. The Court declines to make such a finding. Rather, the Court agrees with the Third Circuit Court of Appeals in that
[t]he res ipsa loquitur doctrine is simply a rule of evidence and like any other rule of evidence it is brought into play where the situation presented makes it applicable. It does not have to be pleaded in the complaint or 'noticed' by specific designation to the adverse party at pre-trial or at trial, since it is neither a cause of action nor a ground for recovery, nor an 'issue'.
Fassbinder v. Pa. R. C., 322 F.2d 859, 863 (3d Cir. 1963) ; see also Millan, 212 F.Supp.3d at 1304 ("Res ipsa is a rule of circumstantial evidence that '[t]he Supreme Court has developed ... in admiralty that permits the trier of fact to draw inferences of negligence from unexplained circumstances.' ") (quoting Lobegeiger v. Celebrity Cruises, Inc., No. 11-21620-CIV, 2011 WL 3703329, at *7 (S.D. Fla. Aug. 23, 2011) ).
Second, Norwegian argues that even if the argument was properly before the Court it does not apply to the facts of this case because Plaintiffs' symptoms are something that commonly occur in persons with diabetes. (Reply at 7 n.3.) However, Norwegian's argument speaks not to the doctrine's applicability, but to its merits-and specifically the third element, (see id. ).
The third element of the maritime res ipsa loquitur test requires the plaintiff to show that the injury "is of a type that ordinarily does not occur in the absence of negligence." Baycon Indus., 804 F.2d at 633 ; see also Cie. Des. Messageries Maritimes, 205 F.2d at 7-8 (quoting San Juan Light & Transit Co., 224 U.S. at 99 ).
*1315 Plaintiff cites no admissible evidence-either in his Statement of Facts or in the res ipsa section of his Response-regarding the type or extent of his injuries, or even describing his symptoms.[10] (See D.E. 52 at 3-9.) Without evidence concerning Plaintiff's injuries, the Court cannot determine whether they are of a type that ordinarily does not occur in the absence of negligence.[11] Therefore, the Court finds that Plaintiff has failed to sustain his burden of showing that the facts of his injury "warrant the inference of negligence." Cie. Des. Messageries Maritimes, 205 F.2d at 8.
IV. Conclusion
Accordingly, it is ORDERED AND ADJUDGED that:
1. Defendant's Motion for Summary Judgment (D.E. 42) is GRANTED ;
2. FINAL JUDGMENT will be entered by separate Order;
3. All pending motions are DENIED AS MOOT ; and
4. This case is now CLOSED .
DONE AND ORDERED in Chambers at Miami, Florida this 28th day of December, 2017.

The following facts are gleaned from Defendant's Statement of Undisputed Facts, ("Def.'s Facts," D.E. 42 at 2-6), Plaintiff's Disputed Material Facts, ("Pl.'s Facts," D.E. 52), Defendant's Response to Plaintiff's Additional Statement of Material Facts, ("Def.'s Reply Facts," D.E. 54 at 2-5), and the record. All facts are undisputed unless otherwise noted.

However, Plaintiff later testified at his deposition that he never entered a Jacuzzi on the day of the incident, only the children's pool. (Id. ¶ 8.)

Plaintiff hired an expert witness, Jon Crate, who performed an inspection of the vessel. (Id. ¶ 16.) Thereafter, Mr. Crate issued a "Supplemental Report"-which has been stricken by the Court pursuant to Rule 37(c)(1), (D.E. 104)-in which he concluded that: (1) Plaintiff's injuries were not caused by an unreasonably hot pool deck because there were other people walking on the deck, including children, and there were no other reported injuries, (Def.'s Facts ¶ 21); (2) Plaintiff's injuries were likely not caused by unreasonably high levels of chemicals in the pool water, because there were no other reported injuries, (id. ¶ 22); and (3) Plaintiff could not have been burned by chemicals used to clean the pool deck because Norwegian only uses soap and water to clean the deck, (id. ¶ 23). Instead, Mr. Crate opined that the "most probable source of chemical exposure ... would be leakage from the chemical storage shed." (D.E. 42-8.)
To begin with, there is no evidence that there were chemicals leaking from the Norwegian Sky 's "chemical storage shed[,]" (Def.'s Facts ¶ 25), and there is no evidence that anyone else was injured by chemicals leaking from the Sky 's chemical room on the date of the incident, or prior to the date of the incident, (id. ¶¶ 29-30).
Regardless, Defendant argues that it is entitled to summary judgment on the theory of liability asserted through Mr. Crate's now-stricken Supplemental Report because that theory is not asserted in Plaintiff's Corrected Amended Complaint. (Mot. at 8-10.) To the extent that Plaintiff relies heavily on Mr. Crate's theory in his Response to Defendant's Motion for Summary Judgment, the Court finds that Norwegian is entitled to summary judgment on that theory of negligence because it is not pled in the Amended Complaint. Edwards v. Niles Sales & Serv., Inc., 439 F.Supp.2d 1202, 1224-26 (S.D. Fla. 2006) (granting summary judgment in favor of defendant on theory of liability first raised in the plaintiff's response to the defendant's motion for summary judgment, and collecting cases). See also Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (holding that the plaintiff could not raise a new claim in response to motion for summary judgment that was not pled in the complaint); Pycsa Panama, S.A. v. Tensar Earth Techs., Inc., 625 F.Supp.2d 1198, 1254 (S.D. Fla. 2008) ("A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered in resolving the motion for summary judgment.") (quoting Southwick Clothing LLC v. GFT (USA) Corp., No. 99-10452, 2004 WL 2914093 (S.D.N.Y. Dec. 15, 2004) ).
The Court rejects Plaintiff's argument that the "storage room leak" theory is merely more specific evidence of the general claims raised in the Amended Complaint. (See Resp. at 8 (citing Long v. Celebrity Cruises, Inc., 982 F.Supp.2d 1313, 1317 (S.D. Fla. 2013) ).) The Court rejects this argument because there is no evidence of a storage room leak or of any chemicals on the deck near the storage room.
Finally, even if summary judgment were not appropriate on the "storage room leak" theory, the Court could not consider Mr. Crate's stricken Supplemental Report as evidence supporting Plaintiff's opposition to Defendant's Motion. See White v. Wells Fargo Guard Servs., 908 F.Supp. 1570, 1577 (M.D. Ala. 1995) (noting that when considering a motion for summary judgment, "the court may consider only that evidence that would be admissible at trial") (citing Soles v. Bd. of Comm'rs of Johnson Cty., 746 F.Supp. 106, 110 (S.D. Ga. 1990) (citing Sires v. Luke, 544 F.Supp. 1155 (S.D. Ga. 1982) ; Samuels v. Doctors Hosp., Inc., 588 F.2d 485, 486 n.2 (5th Cir. 1979) )).

There are no photographs attached to Plaintiff's Response brief, and the Court has failed to locate them anywhere else on the record. Accordingly, the Court cannot consider them as evidence of Plaintiff's injuries.

In fact, Plaintiff described this "white foamy type thing" as being "like a soap residue, soap or something," (id. at 69:12-13), which is consistent with the undisputed evidence that Norwegian only uses soap and water to clean its decks. (Def.'s Facts ¶ 23.)

On August 25, 2017, the Court entered an Order striking certain opinions of Plaintiff's treating physicians. (See D.E. 78.) First, the Court found that Plaintiff was precluded from eliciting expert testimony from his treating physicians under Rule 37(c)(1) because he failed to provide a written expert report as required by Rule 26(a)(2)(B). (Id. at 7-8.)
Second, the Court struck the deposition testimony of Plaintiff's treating podiatrist, Dr. Daniel Bell, opining as to the cause of Plaintiff's injuries. (Id. at 15.) The Court found that opinion to be "outside the scope of Dr. Bell's lay witness testimony as a treating physician because, by his own admission, he did not need to determine causation to treat Plaintiff." (Id. at 15 (citing United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005) ).)
Third, the Court found that Plaintiff's other treating physicians were precluded from offering lay testimony-i.e., treatment and diagnosis-because Plaintiff failed to provide an adequate disclosure under Rule 26(a)(2)(C). (Id. at 16.) However, the Court provided Plaintiff leave to amend his witness disclosures to come into compliance with Rule 26(a)(2)(C). (See id. at 16-17.)
On August 31, 2017, Plaintiff filed Amended Witness Disclosures. (D.E. 80.) Defendant has again moved to exclude Plaintiff's treating physicians from offering certain testimony, arguing that the Amended Witness Disclosures are still inadequate. (D.E. 94.) That motion remains pending. However, the Amended Witness Disclosures do not state that any of Plaintiff's treating physicians intend to testify that Plaintiff suffered chemical burns. (See D.E. 80.) Under Federal Rule of Civil Procedure 26(a)(2)(C), when a plaintiff seeks to introduce lay testimony from his treating physicians, he must disclose "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705 ; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Because the Amended Witness Disclosures do not disclose that any of Plaintiff's treating physicians intend to testify generally as to what caused Plaintiff's injuries or more specifically that Plaintiff suffered a chemical burn, they would be precluded from doing so under Rule 26(a)(2)(C).

Nor did he disclose that any of his treating physicians intended to testify regarding the cause of his injuries. (See id. )

Dr. Jason Hanft, a podiatrist who performed an independent medical examination of Plaintiff, concluded that Plaintiff suffered burns to his feet, but found "no physical or historical evidence" that Plaintiff's burns were caused by chemicals. (D.E. 70-14 at 8.)

In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

Plaintiff cites to the deposition testimony of Dr. Daniel Bell, Plaintiff's treating podiatrist, in which Dr. Bell opines as to the cause of Plaintiff's injuries, but those opinions have been stricken by the Court. (See D.E. 78 at 15.) Plaintiff also cites the testimony of Jon Crate regarding the cause of Plaintiff's injuries, but the Court has stricken Mr. Crate's testimony as well. (See D.E. 104.)

As stated in Note 8, supra, Dr. Hanft concluded that Plaintiff suffered burns to his feet, but found "no physical or historical evidence" that Plaintiff's burns were caused by chemicals. (D.E. 70-14 at 8.) He further opined that the injury was "more than likely ... a combination of thermal injury and pressure ...." (Id. ) In this regard, the Court has already found that the hot pool deck was an open and obvious condition for which Norwegian cannot be held liable for negligence. (See supra Section III(c).)